CARNAHAN, APPELLANT, *v.* CARNAHAN ET AL., APPELLEES.

(No. 190—Decided March 31, 1959.)

*Mr. Lawrence R. Lyons,* for appellant.
*Messrs. Schilling & Schilling,* for appellees.

*Per Curiam.* This is an action seeking a rescission of a written contract, dated April 26, 1957, between the plaintiff, widow of H. R. Carnahan, appellant herein, and his children, J. E. Carnahan, Harry Carnahan, George I. Carnahan, and Lucille Richardson, appellees herein. The appeal to this court is on questions of law and fact. It is presented to this court upon the record made in the Court of Common Pleas of Clinton County, in which this action originated.

H. R. Carnahan, a resident of Blanchester, Ohio, died, testate, on April 7, 1957. His children resided at various places within a radius of not to exceed twenty-five miles, and the widow and all the children attended the reading of the will a few days after H. R. Carnahan's death, at his former residence, where the plaintiff had continued to reside, although H. R. Carnahan had

only a life estate—the fee, subject to his life estate, having been inherited by his children from their mother, the first wife of H. R. Carnahan.

So far as the record shows, neither the widow nor any of the children knew of the exact contents of the will. By its provisions, it gave the widow some miscellaneous household furniture and a bequest of $5,000, and all the rest was given to the testator's children, in equal shares. Two sons, J. Estel Carnahan and George I. Carnahan, were named executors, without bond. This will was dated January 30, 1951.

The record justifies the conclusion that the plaintiff was on agreeable, but not intimate, terms with the children of H. R. Carnahan by his former marriage. However, after his death, she seemed to desire to have her share of the estate liquidated and paid over to her. She so stated to the wife of one of the defendants, and also, that if she could be paid at once what the will provided for her and $1,000 for her year's support that was all she desired. It was in pursuance of that suggestion that the contract was prepared and executed, and performed by the payment of $6,000 to the plaintiff and delivery of the miscellaneous household goods to her.

At the time the contract was signed, the members of the family had only a general knowledge of the assets constituting the estate. They knew their father owned a house in Blanchester and a farm of 102 acres in the vicinity. But they did not know the value of either, and, of course, exact knowledge was not susceptible, being entirely a matter of speculation. They knew he had money deposited in two financial institutions and owned some bank stock.

A little over a month after this contract was made, an inventory and appraisement of the estate was made, showing $16,839.20 on deposit in banks, and appraising the bank stock at $4,620, the farm at $7,000, and the town house at $2,000. There were accounts receivable, but a large part was barred by the statute of limitations, all totaling $36,485.10.

It seems that after this inventory was filed, for the first time, the fairness of this settlement was brought in question. And, it is true that the right of the widow under the law far ex-

ceeds the amount which she got under the settlement. But it must be remembered that she, knowing fully her rights under the law as well as the law, professed to consider herself morally bound by the will. Thus considered, the plaintiff's agreement does not seem so disproportionate. Estates do shrink in the process of liquidation, as is well known. She avoided that by the settlement.

This agreement was in no true sense between a widow and the executors. It was an agreement among the beneficiaries of an estate; the executors were nominal parties only. They were all of full age and of sound mind. The plaintiff had equal knowledge of the facts and also of the law. This knowledge she acquired from others and was told by the defendants in the process of negotiating the form of the agreement.

There is some evidence that the plaintiff was suffering from influenza at the time and that that may have made her more susceptible to undue influence. There is very little evidence to support this position. During this time the plaintiff was not confined to her bed, but was traveling about the county and keeping appointments, accompanied by her daughter. And the difficulty with the plaintiff's position in this regard is that there is no evidence of any influence of any sort, exercised by any one, to induce her to enter into this agreement.

To rescind this contract, would require us to hold that an agreement among all the beneficiaries of an estate, providing for the division of the assets of the estate, is void and unenforceable as a matter of law, even though made freely, and with full knowledge of all the facts. We do not think that is the law.

For these reasons, the court finds for the defendants.

An entry of dismissal may be presented.

*Judgment for defendants.*

MATTHEWS, P. J., LONG and O'CONNELL, JJ., concur.